McKinney, J.
delivered the opinion of the court.
This was an action of ejectment, brought in the circuit court of Montgomery county, for the recovery of three lots, being Nos. 85, 87 and 88, in the town of Clarksville. The verdict and judgment were for the *215 defendant in the circuit court, and an appeal in error to this court, in behalf of the lessors of the plaintiff.
Various questions were raised and discussed in the argument here, but as the case, in the view we have taken of it, turns upon the application of the statute of limitations, it is deemed unnecessary to notice the other points made by the counsel.
The rule is now well established, in this State, that an adverse possession of land for the period of seven years, “by virtue of a deed of conveyance, devise, grant, or other assurance, purporting to convey an estate in fee simple,” though inoperative, or void, in the inception, will, under the first section of the act of 1819, ch. 28, operate to vest in the possessor a good and indefeasible title in fee simple to the land, described in such deed, or other assurance of title, as against all persons not under the disabilities, or some one of them, expressly specified in the statute. And the question for our determination is, whether or not the case before us falls within the operation of this principle?
The facts relating to this point are these: the lots in question were formerly owned and occupied by Andrew Vance, (the father of the lessors,) through whom the respective parties to this action deraign opposing titles to said lots, in the following manner.
On the 13th day of September, 1839, several judgments were recovered against said Vance in the federal court at Nashville: executions issued thereon and were levied on said lots, by the marshal of Middle Tennessee, on the 2d day of December, 1839; and on the 2d day of March, 1840, by virtue of said levy, said lots were sold to Thomas Washington; and on the 4th day *216 of April thereafter, the marshal executed to him a deed of conveyance for the same; and on the 26th day of February, 1849, said Washington conveyed said lots to Johnson, the defendant.
After the rendition of said judgments in the federal court, but before the levy of the executions on said three lots, namely, on the 11th day of November, 1839, said Andrew Vance conveyed said lots in trust to Charles Bailey, for the benefit of certain creditors of the former. And on the 2d day of March, 1842, said Bailey, the trustee, pursuant to the deed of trust, sold said three lots to Thomas Sherman; and on the 27th day of August thereafter, executed to him a deed of conveyance for the same. And on the 1st day of January, 1844, said Sherman sold and conveyed said lots to the lessors of the plaintiff.
Andrew Vance resided upon said lots a,t the time said judgments were obtained against him in the fedé-ral court, and prior to that time; and remained in the occupancy thereof until his death, which happened in the latter part of the year 1840. After his death, his widow and family continued the possession until early in the year 1844.
After the marshal’s sale, and prior to the sale by the trustee, viz, on the 25th day of January, 1841, Mrs. Vance (the widow of said Andrew Vance) took a lease of said property from Washington for the year 1841, and for that year’s rent, executed a note for two hundred and fifty dollars. At the expiration of the year, she re-fused either to renew the lease, or to surrender the possession of the premises to her lessor; and thereupon a course of litigation between her and the lessor, Washington, for the recovery of possession, was commenced, *217 which lasted until early in the year 1844, when she abandoned the premises; and immediately thereon the tenant of Washington took possession, and an uninterrupted adverse possession, under the marshal’s deed, has been continued up to the commencement of the present action, which was on the 27th day of February, 1849.
Upon the foregoing state of facts, we concur in opinion with the counsel for the lessors of the plaintiff, upon the point, that their title, derived under the trust sale, Avas the valid and superior title. The federal court judgment, in virtue of which said lots were levied on and sold by the marshal, were not registered in Montgomery county, the residence of the judgment debtor, as required by the act of 1831, ch. 9, sec. 8, in order to create a lien on the debtor’s real estate. Consequently no lien attached until the actual levy of the ex-cutions; and this being subsequent to the making of the deed of trust, by which the legal title was divested out of Vance, nothing was left for the executions to attach mr operate upon, and the levy and sale were therefore inoperative. That the statute above referred to, applies equally to federal court judgments as to judgments of our own courts, has been solemnly adjudged by this court, in the case of Reid vs. House and others. 2 Hump., 576. And, upon this point, we deem it only necessary to add, that, upon reviewing that casey we are at least prepared to express our entire and deliberate approval of the principle it decides.
But, upon the other point, in respect to the application of the statute of limitations, we coincide in opinion with the defendant’s counsel.
The actual, conventional relation of landlord and tenant having been established between Washington and *218 Mrs. Vance, by the lease for the year 1841, she, in law, continued to sustain the relation of tenant to him, notwithstanding her holding over and refusal either to take a new lease, to pay rent, or to surrender the possession. So long as she retained the possession, by holding over after the expiration of the lease, whether she be regarded as a tenant from year to year, or strictly as a tenant at will, or by sufferance, the estoppel to controvert her landlord’s title applied equally as if she had continued to hold under a written lease. Angel on Lim. eh. 33.
The landlord may, if the tenant hold over, elect to consider him a disseisor, for the purpose of proceeding against him for the recovery of possession; or he may treat him as a tenant still, and hold him liable for rents in an action for use and occupation. But the tenant cannot constitute himself a disseisor, or change his relation so long as he continues to hold the posess-ion derived from his lessor; unless, indeed, his possession has been continued for such a length of time, and under such circumstances, as will enable him to bar the lessor’s right of possession by operation of the statute of limitations; or, unless, he can show that the relation has been dissolved.
It being established that the possession of Mrs. Vance, during all the time of its continuance, was in law the possession of her lessor, it follows that the period of time required to create the bar of the statute of limitations had elapsed before the commencement of this action: and, consequently, that both the right of action and title of the lessors of the plaintiff, are barred and forever extinguished.
*219 It avails the lessors nothing that they are minors. The facts of the case do not bring them within either of the exceptions specified in the statute. The bar of the statute had attached before their title, or right of action accrued: and having once attached, nothing could arrest its operation, short of a "‘suit in law or equity effectually prosecuted,” within the period of seven years from the time of the adverse possession commenced.
But, it is argued for the lessors of the plaintiff, that the possession of Washington cannot, upon established and admitted legal principles, be held to have commenced until the abandonment of the possession of the lots in controversy by Mrs. Vance, in 1844; because, as is alleged, after the conveyance by Andrew Vance to the trustee, the former, remaining in possession, stood in the relation of tenant to the latter; and after the death of Andrew Vance, his widow, continuing the possession, stood in the same relation; and that such being the relation, the possession of both enured to the benefit of the trustee, and those claiming under the trust sale: and, consequently, that the attornment of Mrs. Vance to the purchaser at the execution sale, and also the lease from him, were a nullity; she being estopped, either to attorn or take such lease, by reason of her supposed relation to the trustee.
If these premises were tenable, the legal conclusion would be inevitably, that the lessor's right of action is not barred, inasmuch as the period of seven years did not elapse from the abandonment of possession by Mrs. Vance until the institution of the present action. But the argument will be found to be altogether fallacious.
The technical principle of estoppel applies only to the conventional relation of landlord and tenant, and not to *220 a relation arising from mere operation of law. Angel on Lim., ch. 33, sec. 7; 7 Cowen’s Rep., 323. This is equally clear in reason, as upon authority. The principle is of feudal origin. By the policy of that system the vassal, or tenant, after having received investiture, or livery of seisin, and vowed fidelity and homage to his lord, was not permitted to question the lord’s title so long as that relation existed. He could not do so without breaking the faith which he had pledged. And though the feudal reasons of the rule have ceased, yet reasons of general policy have caused the rule to be preserved in its original vigor, wherever the relation of landlord and tenant exists by positive contract. See 1 Greenleaf Ev., see. 25. But this rule cannot be held applicable, to the same extent, to a case where no such actual relation exists; where the person in possession did not receive such possession from the legal owner; where there exists between them no privity, either of estate, or contract; where there is no obligation on the part of the'person in possession to pay rent, or other service, or pledge of faith to restore such possession; in short, where there exist no reciprocal duties or obligations binding equally upon the parties, or either of them.
The relation of mortgagor (suffered to remain in possession until foreclosure) to the mortgagee, is, in some respects, like that of a tenancy at will; but, it is not strictly such. And the relation of the conveyor in a deed of trust, to the trustee, is exactly similar. In the case of Moss vs. Gallimore, (Douglas’ Rep., 279, 282) Lord Mansfield says, “a mortgagor is not properly tenant at will to the mortgagee, for he is not to pay him rent. He is so only quodam modo. Nothing is more apt to confund than a simile. Where the court, or counsel, *221 call a mortgagor a tenant at will, it is barely a comparison. He is like a tenant at will.” The same doctrine is held by Buller, J. in the case of Birch vs. Wright, 1 Term Rep., 378, 383.
All the authorities, however, concur, that the possession of the mortgagor is not to be regarded as adverse to the mortgagee; and so as respects the parties to a deed of trust, which stands on the same principle. In other words, the possession, in such case, will be presumed to be in subordination to the legal title, until proof of actual disclaimer. And this principle applies to all cases, where the relation of landlord and tenant is created by mere operation of law. But there exists this important distinction between the actual and constructive relations. The tenant, in the former case, is not permitted to disclaim the landlord’s title, or to set up an adverse possession, so long as the relation subsists. But, in the latter case, there is no such restraint imposed upon the quasi tenant, as he is styled in some of the cases. He is not within the principle that precludes a tenant from setting up an adverse title or possession. His relation is founded upon mere acquiescence, and may be terminated at any moment. He may, while in possession, attorn to another, or acquire an adverse title in himself. And, in either case, the possession is thereby changed, and the statute of limitations will attach. And all this is perfectly consistent with the doctrine maintained by this court in the cases of Mitchell’s lessee vs. Lipe, 8 Yerg. 179, and Wood vs. Turner, 8 Hum,, 689, and other cases,- upon the same subject.
In the former case it was held, that the title of the defendant in an execution, being transferred to the purchaser by the sale and sheriff’s deed, his possession, af- *222 terwards, was consistent with the purchaser’s title: and he would, therefore, be deemed to continue the possession, in the character of quasi tenant at will, until an actual disseisin or disclaimer on his part.
In Wood vs. Turner, it is held, that the only restriction imposed by such quasi tenancy, is to preclude the execution debtor, who remains in possession of the land sold at sheriff’s sale, from requiring the purchaser, in an action of ejectment against the former, “to produce any other evidence of title than proof of his, the defendant’s possession, a judgment and execution against Mm, a sale and purchase thereon, and a deed from the sheriff.,’
If therefore it be conceded, in the case nnder consideration, that Andrew Vance, subsequent to the execution of the deed of trust, sustained the relation of quasi tenant at will to the trustee; and, that, after his death, Mrs. Vance’s relation was the same (though upon this, point, we mean to express no decided opinion,) still, we have seen, that, to such implied relation of tenant, the law attaches no estoppel or restriction, except such as are recognized in the authorities before cited. And, therefore, it results, that this attornment of Mrs. Vance to the defendant’s vendor was lawful: and at that point of time the statute of limitations commenced to operate.
The judgment of the circuit court will be affirmed.